THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ANDREW VALLES,<br><br>    Petitioner,<br><br> v.<br><br>JAMES HILL, Warden at California Institute for Men, et al.<br><br>    Respondent. | **MEMORANDUM DECISION & ORDER DISMISSING HABEAS PETITION**<br><br>Case No. 2:20-CV-00774-DBB<br><br>District Judge David Barlow |

Petitioner, Andrew Valles, requests federal habeas relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA") regarding his Utah state convictions. *See* 28 U.S.C.S. § 2254 (2023).[1] Having carefully considered germane documents and law, the Court holds that this case is inexcusably untimely. *See* 28 U.S.C.S. § 2244(d)(1)(2023). The case is therefore dismissed with prejudice.

## I. BACKGROUND

Between July 23, 2002 and May 20, 2003, Petitioner occasionally stayed in the home of his then business partner. (ECF No. 35, at 12.) Petitioner's business partner is the father of two sons, who were, at the time, aged eleven and thirteen. S.D.N.Y. (ECF No 35-1, at 7-8.) The children accused Petitioner of subjecting them to inappropriate sexual behavior while he was in

---

[1] Section 2254 reads in pertinent part:
> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.S. 2254(a) (2023).

their home and were interviewed by the police on June 26, 2003. *Id*. Petitioner was charged with three second degree felonies, including sex abuse of a child (Utah Code Ann. § 76-5-404.1 (2023)), and five misdemeanors, including the two counts of attempted dealing of harmful material to a minor (Utah Code Ann. § 76-10-1206 (2023)). (ECF No. 34-11, at 1.) In October 2004, Petitioner pleaded guilty to two misdemeanor counts of lewdness involving a child and two misdemeanor counts of attempt to deal in harmful material to a minor. (ECF No. 34-2, at 1-2.) Petitioner's motion to withdraw his plea was denied and sentencing occurred on January 25, 2005. (*Id*, at 2.) Petitioner was sentenced to 365 days for each count, to run consecutively. (*Id*, at 2-3.) Petitioner initiated a direct appeal, which he later withdrew. (ECF No. 34-4.) Petitioner then filed an application for post-conviction relief under the Utah Post Conviction Remedies Act. (ECF No. 34-7, at 1.) That case was dismissed after counsel for Petitioner withdrew from the case, and the court was unable to locate or contact Petitioner. (ECF No. 34-7, at 3.) More than a decade later, after subsequent felony convictions, Petitioner initiated this federal petition for habeas corpus after discovering that the 2004 Utah convictions would increase his new sentences. (*See* ECF No. 11, at 34-35.)

## II. RELEVANT TIMELINE

- 10/12/04   Petitioner pleads guilty to two misdemeanor counts of lewdness involving a child and two misdemeanor counts of attempt to provide harmful material to a child. (ECF No. 34-2, at 1-2.)

- 1/27/05   Petitioner is sentenced to 365-day terms for each count, running consecutively. (ECF No. 34-2, at 2.) Petitioner is required to comply with sex offender conditions. (*Id.,* at 4.)

- 2/18/05   Petitioner, represented by counsel, files direct appeal to the Utah Court of Appeals. (ECF No. 34-3.)

- 8/11/05   Petitioner moves to withdraw appeal. (ECF No. 34-4.)

• 8/16/05     Court of Appeals dismisses Petitioner's direct appeal. (ECF No. 34-6.) AEDPA one-year filing period commences. *See* 28 U.S.C.S. § 2244(d)(1)(A) (2023).

• 7/31/06     Petitioner files application for post-conviction relief ("PCP"). (ECF No. 34-7, at 1.) The PCP includes affidavits alleging that the victim's father threatened to harm potential defense witnesses if they testified on Petitioner's behalf. (ECF No. 35, at 15.) The AEDPA filing period for federal habeas relief is tolled after 249 days. *See* 28 U.S.C §2244(d)(1)(a) (2023).

• 3/14/07     Counsel for Petitioner withdraws from the case. (ECF No. 34-7, at 2.)

• 10/4/07     Utah Third District Court issues *sua sponte* order to show cause why the PCP should not be dismissed for failure to prosecute. (ECF No. 34-7, at 2.)

• 10/18/07    Utah Adult Probation & Parole notifies the district court that service on Petitioner could not be accomplished because Petitioner is a fugitive whose whereabouts were unknown. (ECF No. 34-7, at 2.)

• 10/23/07    Utah Third District Court dismisses PCP without prejudice. (ECF No. 34-7, at 3.)

• 11/23/07    Period for appeal of the PCP dismissal expires and AEDPA one-year limitations period resumes. 28 U.S.C.S. § 2244(d)(1)(A) (2023).

• 12/10/07    AEDPA one-year limitations period expires. *See* 28 U.S.C.S. § 2244(d)(1)(A) (2023).

• 10/21/08    A second state petition for post-conviction relief is filed but no further action is taken. (ECF No. 34-7, at 3.)

• 4/11/13     Utah Third District Court destroys Petitioner's post-conviction case files after years of inactivity. (ECF No. 34-7, at 3.)

• 9/13/19     Petitioner pleads guilty in the Southern District of New York to failure to register as a sex offender from July 2006 through May 2018. (ECF 35-1, at 1-2.)

• 10/29/20    Petitioner places federal Petition in prison mailing system. (ECF No. 11, at 25.)

• 7/16/21     Petitioner, incarcerated in California, sends letter to Third District Court of Utah seeking copies of the case file, appointment of counsel and instructions on how to resuscitate his PCP. (ECF No. 34-8.)

## III. ANALYSIS

Federal statute sets a one-year period of limitation to file a habeas corpus petition. 28

U.S.C.S. § 2244(d)(1) (2023). The period begins to run from "the date on which the judgment

3

became final by the conclusion of direct review or the expiration of the time for seeking such review." U.S.C.S. § 2244(d)(1)(A) (2023). Alternatively, the period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C.S. § 2244(d)(1)(D) (2023). In this context, the Tenth Circuit Court of Appeals has defined due diligence as "an 'objective standard' that refers to when a plaintiff 'could have' discovered the pertinent facts, not when [he] actually discovered them." *Madrid v. Wilson*, 590 F. App'x 773, 776 (10th Cir. 2014) (quoting *United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012)).

### A. Statutory Tolling

The limitation period "is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period." *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (citing 28 U.S.C.S. § 2244(d)(1) (2023)). A "state postconviction application 'remains pending' 'until the application has achieved final resolution through the State's postconviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (quoting *Carey v. Saffold,* 536 U.S. 214, 220 (2002)); *see also Fisher v. Raemisch*, 762 F.3d 1030, 1032 (10th Cir. 2014). Once the post-conviction case ends in state court, the one-year limitation period begins to run again. *See Holland v. Florida*, 560 U.S. 631, 638 (2010).

Tolling, however, does not revive the limitations period--i.e., restart the clock at zero. It serves only to suspend a clock that has not already run. *See id.*; *Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001); *see also Laws v. LaMarque*, 351 F.3d 919, 922 (9th Cir. 2003). Thus, any time between when a petitioner's direct appeal becomes final and when he files his petition for state post-conviction relief is counted in the limitations period. And, any time between when the state post-conviction action concludes and before a petitioner's habeas petition is filed also

4

counts toward the limitations period because state-collateral review only pauses the one-year period; it does not delay its start. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run.").

In other words, time elapsing after a petitioner's conviction becomes final on direct review, but before a state post-conviction petition is filed, and time after final disposition of the petitioner's post-conviction proceedings, but before the filing of the federal habeas petition, *aggregate* to count against the one-year-limitation period. *See Sutton v. Cain*, 722 F.3d 312, 316 n.6 (5th Cir. 2013) ("To calculate when the limitations period has run, we aggregate the time between (i) the date the petitioner's conviction became 'final' and the date the petitioner filed his state [post-conviction] application; and (ii) the date the state [post-conviction] process concluded and the date the petitioner filed his federal habeas petition.").

Here, Petitioner's statutory filing period began to run when the court of appeals granted Petitioner's motion to dismiss his appeal on August 16, 2005. Petitioner filed his PCP 349 days later, which tolled the filing period. (ECF No. 34-7, at 1.) When Petitioner was released from custody in 2006, Petitioner failed to maintain contact with Adult Probation and Parole. (ECF No. 34-7, at 2.) Nor did he comply with his sex offender registration requirements. (ECF 35-1, at 1-2.) As a result, when Petitioner's counsel withdrew from the case, the court had no means to contact Petitioner. ECF 34-7, at 2. The PCP was dismissed without prejudice on October 23, 2007. (ECF No. 34-7, at 2.) The remaining sixteen days of the AEDPA filing period began to run when the PCP dismissal became final on November 23, 2007. Therefore, the statutory filing

period expired on or about December 10, 2007. Petitioner's claim is barred unless equitable tolling or actual innocence applies.

### B. Equitable Tolling

"Equitable tolling is 'a judicially-crafted stopping of the clock' that" is applied "'only in rare and exceptional circumstances.'" *United States v. Barger*, 784 F. App'x 605, 607 (10th Cir. 2019) (unpublished) (quoting *Fisher*, 262 F.3d at 1143); *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)). Equitable tolling "will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted). Petitioner "has the burden" of showing equitable tolling applies. *Lovato v. Suthers,* 42 F. App'x 400, 402 (10th Cir. 2002) (unpublished). A petitioner is only entitled to equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner argues that his Petition was timely because: Petitioner's trial counsel refused him access to the case file, (ECF No. 35, at 8-9, 11-14); Petitioner's *pro bono* PCP counsel abandoned him (*id*. at 9, 14); Petitioner only discovered in August 2021 that his state habeas petition(s) had been dismissed and the case materials destroyed (*id.* at 10); the victims' father had threatened potential witnesses for the defense prior to Petitioner's decision to plead guilty to reduced charges (*id*. at 14-16); and "Petitioner has diligently pursued his rights at every possible turn since 2006 as more detail came to light." (*Id*. at 9.)

Petitioner fails to adequately support his claim that he diligently pursued his rights. Although Petitioner claims he made thirteen requests for access to his case file from his trial

counsel between 2004 and 2006, he offers no documentation supporting the claim. (ECF No. 35, at 9-11). Further, Petitioner fails to allege any efforts to pursue his habeas rights between 2006 and 2019. Petitioner ultimately filed his petition more than twelve years after the AEDPA deadline. This is insufficient to show the diligent pursuit of his rights.

The cases he cites in support of his arguments also are readily distinguishable. For example, Petitioner relies on *Holland v. Florida*, 560 U.S. 631, (2010) to bolster his case for equitable tolling. *See, e.g.*, ECF No. 35, at 4. However, Petitioner fails to show that he satisfied the standard for diligent pursuit of his rights as set forth in *Holland*. In *Holland*, the Supreme Court applied equitable tolling where a petitioner documented repeated efforts to urge his attorney to comply with filing deadlines, asked the court to appoint a new attorney because of his own attorney's inaction, and ultimately filed a *pro se* federal petition less than two months after the statutory filing deadline had closed. *Holland*, 560 U.S. at 635-640. For the reasons noted above, Petitioner falls well short of satisfying the standard for reasonable diligence as set forth in *Holland*.

Petitioner also cites *Socha v. Boughton*, 763 F.3d 674 (7th Cir. 2015), in which the court granted equitable tolling after trial counsel failed to release the petitioner's case files to facilitate preparation of the petition for post-conviction relief. *Se, e.g*., ECF No. 35, at 4-5. Petitioner's situation bears scant resemblance to *Socha*. In *Socha*, prior to the expiration of the filing period the petitioner alerted the court to the impediments preventing him from filing and requested an extension. *Socha, 763 F.3d*, at 680. The court granted a three-month extension and the petitioner filed within the extension. *Id.* Further, the Seventh Circuit ruled that the petitioner's efforts to file a timely petition "were hampered at every turn, through no fault of his own." *Socha v. Boughton*, 763 F.3d, at 679. In contrast, Petitioner absconded during his PCP proceeding and offers little to

no explanation of any effort to pursue his rights for more than a decade. Petitioner fails to meet his burden of showing that he was diligent in pursing his right and that extraordinary circumstances prevented him from filing timely.

## 2. Actual innocence

Petitioner also insists his untimeliness should be excused because he is actually innocent. (ECF No. 35, at 14-16.) "To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Fontenot v. Crow*, 4 F.4th 982, 1031 (10th Cir. 2021) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Further, this evidence must "affirmatively demonstrate . . . innocence," not just "undermine the finding of guilt." *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (1993). After presenting such evidence, a petitioner must then "show that in light of the new evidence, 'no reasonable juror would have found the defendant guilty.'" *See Rose*, 194 F. App'x at 502 (quoting *Schlup*, 513 U.S. at 329). Such evidence is so very rare that "in virtually every case, the allegation of actual innocence has been summarily rejected." *Schlup*, 513 U.S. at 324. "An actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021).

Petitioner falls far short of demonstrating his actual innocence. Petitioner fails to offer any "new, reliable evidence" that would prove his innocence such that no reasonable juror would find him guilty. Petitioner's allegations that the victim's father threatened potential witnesses for the defense potentially undermines the credibility of a key witness for the prosecution if the case had gone to trial and could have inhibited witnesses from testifying on behalf of the Defense.

Nevertheless, the alleged threats fall far short of affirmatively showing that no reasonable juror would find him guilty.

Likewise, Petitioner's proffered alibi for July 1, 2002, fails to support Petitioner's claim of actual innocence. The alibi is unsupported by any evidence whatsoever, let alone new and reliable evidence. Petitioner argues:

> Petitioner is alleged to have committed the charged offenses on 01 July 2002. This is a physical impossibility. Petitioner was visiting then-family relatives from 18 June 2002 to 09 July 2002 in Washington (Bremerton, Tacoma, and Bellingham). Petitioner did not step foot into Salt Lake City, nor the state of Utah until 23 July 2002 – for the first time ever; a physical alibi defense trial counsel never pursued (even when asked to, particularly when air travel and rental car records readily existed.

(ECF No. 35, at 14.) Elsewhere, Petitioner admits that he repeatedly stayed overnight in the victim's home between July 23, 2002, and May 20, 2003. (ECF No. 35, at 12.) Even if Petitioner had supplied evidence to support his alibi, Petitioner fails provide evidence that the prosecution's theory of the case depended on the crimes having been committed on July 1, 2002. In fact, the case file strongly suggests otherwise. *See, e.g.*, ECF No. 35-1, at 8. ("Court records state that the offenses occurred from July 1, 2002, through June 1, 2003.") It appears likely that the docket report simply abbreviated the period during which the crimes were alleged to have occurred. Petitioner's unproven alibi for the date listed on the docket report does not show that Petitioner is factually innocent of molesting his business partner's children while he stayed in their home, nor even that there was reasonable likelihood of a different outcome had Petitioner gone to trial. Thus, Petitioner's arguments fail to support his claim of actual innocence.

In sum, Petitioner offers no new evidence, much less the kind of new evidence that would render a guilty verdict unreasonable. The Court thus rejects actual innocence as a basis for an equitable tolling.

**C. The Petition Is Untimely**

Petitioner has not met his burden of showing that he faced extraordinary circumstances that stopped him from timely filing prior to the expiration of the federal period of limitation nor that that he took specific steps to diligently pursue his federal claims during the many years prior to filing his Petition. Accordingly, Petitioner is ineligible for equitable tolling. Nor has he shown actual innocence. The Petition, placed in the prison mailing system on October 29, 2020, nearly thirteen years too late, is therefore untimely.

**D. Petitioner Fails to Show He Could Not Have Discovered Factual Predicates Through the Exercise of Reasonable Diligence**

Petitioner argues that he learned of the factual basis for his federal habeas claims through a presentence report prepared in conjunction with his conviction of failing to comply with his registration requirements. (ECF No. 22-1, at 3.) Petitioner must show that he could not have discovered the factual predicates for his claims through the exercise of due diligence less than one year before he filed his Petition on October 29, 2020 to avail himself of the delayed timeline under § 2244(d)(1)(D).

Petitioner's arguments are unpersuasive. Petitioner offers no support for the contention that he could not have discovered the factual predicate for the claims presented in the Amended Petition through the exercise of due diligence less than one year prior to filing on October 29, 2020. Petitioner's Amended Petition raises the following issues: (1) prosecutorial misconduct (based on the prosecution's reliance on a witness who allegedly threatened potential defense witnesses) (ECF No 22-1, at 6-8); (2) ineffective assistance of counsel (based on an allegation that defense counsel failed to discover that the victim's father had threatened potential defense witnesses) (*Id.*, at 8-9); (3) the PCP court's destruction of Petitioner's case file, including

affidavits pertaining to the alleged threats to potential defense witnesses (*Id.*, at 9-11); (4) judicial misconduct during the PCP proceeding (*Id.*, at 11-13); (5) insufficient evidence to sustain a conviction (*Id.*, at 13-14); (6) malicious prosecution and denial of due process (*Id.*, at 14); (7) cumulative error (*Id.*, at 15); (8) wrongful conviction (*Id.*, at 15-16); (9) false imprisonment (*Id.*, at 16-17); and (10) the registration requirement imposed as a term of Petitioner's probation violates Petitioner's first amendment rights (*Id.*, at 17-18).

None of these issues arise from facts which could not have been discovered through the exercise of reasonable diligence less than one year prior to October 29, 2020. For example, the factual predicate for several of Petitioner's claims is the alleged threats to potential defense witnesses. The fact that Petitioner submitted affidavits alleging the threats to the PCP court on July 31, 2006 demonstrates that Petitioner was aware of the factual predicate for many of his claims more than a decade before he filed his federal Petition. The fact that the Utah courts eventually destroyed his case files after years of inactivity does not change that.

Nor can Petitioner's ignorance pertaining to his court proceedings in Utah justify equitable tolling. Petitioner repeatedly argues that his Petition is timely because he only learned the details about his 2003 Utah charges, and the dismissal of his 2006 PCP through a pre-sentencing report prepared in November 2019 in the Southern District of New York. *See, e.g.*, ECF No. 22-1 at 10, 11. Petitioner would have known that his original PCP was dismissed if he had not absconded and had maintained contact with the Utah courts. Further, Petitioner makes no attempt to explain what diligence he exercised to obtain information about his case in the decade after the PCP was dismissed. Therefore, Petitioner fails to support his contention that his Petition is timely under 28 U.S.C. § 2244(d)(1)(D).

## IV. CONCLUSION

Petitioner unjustifiably delayed filing his habeas-corpus petition until October 29, 2020, more than twelve years past the limitation period's expiration. And neither equitable tolling nor actual innocence applies to rescue his untimely filing.

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss is **GRANTED**. (ECF No. 34.)

This action is **CLOSED**.

DATED this 17th day of July 2023.

BY THE COURT:

_____
JUDGE DAVID BARLOW
United States District Court